

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

**ENTERED**
**09/23/2015**

IN RE:                              §
DIVINE RIPE, L.L.C.                 §           CASE NO: 15-70405
    Debtor(s)                     §
                                  §           CHAPTER  11

**MEMORANDUM OPINION DENYING**
**DEBTOR'S MOTION TO EXTEND STAY TO NON-DEBTOR MARCO JIMENEZ**
**WITH RESPECT TO CERTAIN PRE-PETITION LITIGATIONS**
[*Resolving ECF No. 12*]

# I.     Introduction

This Court reviews whether it is appropriate to extend the same protections afforded to a debtor under Title 11 of the United States Code (the "***Bankruptcy Code***" or "***Code***")[1] to a non-debtor who is the sole member of Divine Ripe, LLC (**"*Debtor*"**).  This Court determines that based on the Motion to Extend the Automatic Stay to Marco Antonio Jimenez a (non-debtor) With Respect To Certain Pre-Petition Litigations, [ECF No. 12], the response by Frescos Tomver, S.A. DE C.V. ("***Frescos Tomver***"), [ECF No. 23], and the Debtor's Reply to Frescos Tomver's Response to Debtor's Motion To Extend Automatic Stay To Marco Jimenez With Respect To Certain Pre-Petition Litigations, [ECF No. 34], the arguments presented in an evidentiary hearing on this matter held September 15, 2015, all other evidence in the record, and relevant case law, there is insufficient justification to warrant the extension of the automatic stay, 11 U.S.C. § 362, to the non-debtor Marco Antonio Jimenez.

# II.     Procedural Background

On October 16, 2013, Frescos Tomver initiated a lawsuit against the Debtor and Marco

---

[1] Any reference to "**Code**" or "**Bankruptcy Code**" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

Antonio Jimenez ("**Jimenez**"), claiming violations under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*,[2] breach of contract, and breach of fiduciary duty in the United States District Court for the Southern District of Texas in McAllen, TX.  [Case No. 7:13-cv-00577, ECF No. 1].  The Debtor filed its Motion to Extend The Automatic Stay to Jimenez With Respect to Certain Pre-Petition Litigation ("**the Motion**"), which is the subject of this opinion, on August 13, 2015.  [Case No. 15-70405, ECF No. 12].

### III.    The Motion To Stay

The Motion filed by the Debtor seeks to have this Court extend the protections of 11 U.S.C. § 362 ("**the Automatic Stay**") to the non-debtor Jimenez.  [ECF No. 12, ¶ 11].  The Debtor argues that it is necessary to extend the protections of the Automatic Stay to Jimenez in order to prevent an "adverse, and likely irreconcilable, economic effect on the Debtor's estate," if Frescos Tomver were to be permitted to proceed with its lawsuit against Jimenez.  *Id.*

### IV.    The Legal Standard

Section 362(a)(1) provides for an automatic stay of any judicial "proceeding against the debtor." 11 U.S.C. § 362(a)(1). "Section 362(a)(3) provides that the filing of a petition 'operates as a[n] [automatic stay] applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate.'" *See Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1148 (5th Cir.1987) (quoting 11 U.S.C. § 362(a)(3)). Ordinarily, the automatic stay under § 362

---

[2] Enacted in 1930, Congress described PACA as "admittedly and intentionally a tough law."  *G & T Terminal Packaging Co., Inc. vs. U.S. Dept. of Agriculture,* 468 F.3d 86, 88 (2nd Cir. 2006)(citing S. Rep. No. 84-2507, at 3 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3699, 3701)).  The law was designed primarily for the protection of the producers of perishable agricultural products - - most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing. . ." *Id.*

does not apply to actions against a non-debtor. *See In re TXNB Internal Case,* 483 F.3d 292, 301 (5th Cir. 2007). Courts recognize that a § 362 stay may apply to an action against non-debtor defendants depending on their relationship to the debtor. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.,* 349 F.3d 816, 825 (5th Cir.2003) ("[A] bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt codefendants where 'there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.' " (quoting *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986))). The party invoking the stay has the burden to show that it is applicable. *See* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 43:4 (3d ed. Supp. 2010) (noting that in bankruptcy court proceedings, "the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor"); *see also Arnold v. Garlock, Inc.,* 278 F.3d 426, 436 (5th Cir. 2001) (holding that the defendant had "no interest to establish such an identity [of interests] with [the] debtor").  This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

## V.   Findings of Fact

1.    Frescos Tomver filed suit against Debtor and Jimenez on October 16, 2013.  The complaint alleged violations of PACA, breach of fiduciary duty, and breach of contract.  [Case No. 7:13-cv-0577, ECF No. 1].

2.      The Parties attempted to mediate the dispute with a scheduled mediation on June 4, 2014.  [Case No. 7:13-cv-0577, ECF No. 35, ¶ 6].  The attorney for the Debtor and Jimenez failed to appear at the scheduled time for the mediation, but the attorney later arrived at approximately 10:30 A.M.  [Case No. 7:13-cv-0577, ECF No. 35, ¶ 14].  However, Jimenez did not appear nor was his attorney able to contact him before noon that day.  *Id.*  On July 9, 2014, the District Court sanctioned the Defendants for failing to attend the court ordered mediation.

3.      Jimenez filed a Motion to Dismiss Plaintiff's Complaint on July 21, 2014 pursuant to Fed. R. Civ. P. 12(b)(1).  [Case No. 7:13-cv-0577, ECF No. 37].

4.      Frescos Tomver filed a Motion for Summary Judgment on October 22, 2014. [Case No. 7:13-cv-0577, ECF No. 56].

5.      The District Court considered the Defendant's Motion to Dismiss and the Plaintiff's Motion for Summary Judgment on November 17, 2014. The District Court heard oral arguments, denied the Motion to Dismiss, and granted Frescos Tomver's Motion for Summary Judgment.

6.      The Debtor filed a Motion to Reconsider the District Court's grant of Frescos Tomver's Motion for Summary Judgment, [Case No. 7:13-cv-0577, ECF No. 68], which was considered at a status conference on February 4, 2015.  The District Court denied Debtor's Motion To Reconsider the Court's granting of Frescos Tomver's Motion For Summary Judgment and noted that the liability for Jimenez was still at issue.  [Case No. 7:13-cv-0577, ECF No. 77, 6:6-12].

7.      Frescos Tomver filed a Motion for Final Summary Judgment on March 20, 2015, [Case No. 7:13-cv-0577, ECF No. 81], and on April 23, 2015, the Court granted the motion as to the Debtor, but not as to Jimenez.

8.      The Debtor filed a voluntary petition for bankruptcy under Title 11, chapter 11 of the United States Code on August 5, 2015.  [Case No. 15-70405, ECF No. 1].

9.      On August 9, 2015, the Debtor filed a Motion to Use Cash Collateral, [ECF No. 6], and included with the motion a copy of the Debtor's "August-September Monthly Budget," [Case No. 15-70405, ECF No. 6-1], that provided a brief description of projected income and expenses.

10.     The Debtor filed its Motion to Extend Automatic Stay As To The Non-Debtor Jimenez, which is the subject of this opinion, on August 13, 2015.  [Case No. 15-70405, ECF No. 12].

11.     After the partial grant of summary judgment, Frescos Tomver filed a Motion to Sever the Debtor on August 14, 2015.  [Case No. 7:13-cv-0577, ECF No. 90].

12.     The District Court granted Frescos Tomver's Motion to Sever on September 1, 2015, leaving only Jimenez as a party to the case.  [Case No. 7:13-cv-0577, ECF No. 93].

13.     The District Court is considering Frescos Tomver's Motion for Summary Judgment against Jimenez concurrent with this Court's consideration of the Debtor's Motion to Extend the Automatic Stay As To The non-debtor Jimenez.  [Case No. 7:13-cv-0577, ECF No. 93].

14.     At the September 15, 2015 hearing, the Debtor offered, and the Court admitted the following exhibits relating, among others, to the operations of the Debtor and the relationship of Jimenez to the Debtor:[3]

15.     Exhibits P-B:   The documents presented were copies of Jimenez's alleged financial contributions to the Debtor.

        a.      Exhibit P-B 2-4 purported to be a recitation of all of the transactions

---

[3] Debtor's Exhibits P-B, P-C, P-D, and P-F were presented in Spanish.

between the Debtor and Jimenez from October 2005 to April 2015.

    b.    Exhibit P-B 1 purported to be a summary of the total contributions from Jimenez to the Debtor that amounted to $10,341,945.51, with $1,622,788.91 designated as "Personal" and the remaining $8,809,156.60 allocated as "Divine Support."

16.    Exhibits P-F:  purported to be an explanation of the tomato farming operation by Jimenez in Mexico.   However, the only information contained in the explanation was an unsubstantiated estimate for harvest yield, price per box, and total sales.

17.    Exhibits P-G and P-H were merely copies of Frescos Tomver's Motion for Summary Judgment, [Case No. 7:13-cv-0577, ECF No. 56], styled No. 2 and No. 3, which were offered by the Debtor in support of its claim of immediacy of the need for relief from the threat presented by Frescos Tomver.  Exhibit P-H corresponded with Fresco Tomver's Exhibit R-3.

18.    Exhibit P-K included the Debtor's initial petition, [Case No. 15-70405, ECF No. 1], and the accompanying schedules.

19.    Frescos Tomver offered and the Court admitted the following exhibits:

    a.    Exhibit R-1 which included the Debtor's schedules and the Statement of Financial Affairs, [Case No. 15-70405, ECF No. 21];

    b.    Exhibit R-3 which was the Plaintiff's Motion for Summary Judgment against Jimenez, [Case No. 7:13-cv-00577, ECF No. 91]; and

    c.    Exhibit R-4 which is the Partial Summary Judgment as to the Debtor, [Case No. 7:13-cv-00577, ECF No. 85].

    d.    Frescos Tomver did not offer any live witness testimony.

20.    Notably, Jimenez did not appear to testify at the hearing.  The Debtor's only live witness was Saul Zuniga.  Mr. Zuniga testified to the following:

a. Mr. Zuniga is presently in charge of the Debtor's operations in Texas under the direction of Jimenez.  However, Mr. Zuniga is neither an officer or a director of the Debtor, nor is he a licensed Certified Public Accountant.

b. The Debtor generates approximately $42,000 in monthly rental income of a warehouse located at 9901 S. Jackson Road, Pharr, TX owned by the Debtor ("Warehouse"), [Case No. 15-70405, ECF No. 21, p. 1], of which approximately $25,000 is used to pay the monthly mortgage to Inter National Bank, a secured creditor of the Debtor.

c. The plan of reorganization, which has yet to be filed, will be funded in part through the sale of produce, sourced from Mexico, which includes personal production to be performed by Jimenez on twenty (20) hectares of land in the Mexican State of Jalisco.  Mr. Zuniga believed that a semiannual crop could yield as much as 6,000-7,000 boxes per hectare, which typically sold at $10-$20 per box but could sell as high as $40 per box.  The earliest that this produce might be available is in late 2015, thereafter available twice each year.  The total first year production could be 120,000 to 140,000 boxes based on the estimates, but the production costs an average of sixty percent of sales. Jimenez may expand production to additional hectares based on the viability of such an expansion.

d. Mr. Zuniga believed, but could not confirm, that Jimenez is currently in Jalisco, Mexico to work on the tomato farm in order to generate a cash crop that would fund the reorganization plan, which is vital to the success of the Debtor.

e.  Mr. Zuniga further testified that the contributions from Jimenez were made from his personal account to the Debtor based on Jimenez's operations in Mexico and the sale of a house.  Mr.  Zuniga also pointed to Exhibit P-C, page 5, which contained accounting entries that indicated that an entry on March 31, 2010, which he believed represented the capitalization of $2,364,214.47 in contributions from Jimenez to the Debtor sometime between 2005 and 2010.

f.  Mr. Zuniga further testified that some entries represented the sale of produce related to investments, agreements, or other arrangements by Jimenez personally.

g.  On cross examination, however, Mr. Zuniga admitted that (i) he had no personal knowledge of Jimenez's activities in Mexico and his knowledge was based solely on what Jimenez had told him; (ii) that Jimenez instructed Mr. Zuniga to appear at the September 15, 2015 hearing as a representative of the Debtor, because Jimenez himself would not be able to attend as he was attending to the tomato crop in Mexico; (iii) that he had an incomplete knowledge of Jimenez's personal financial situation, but that his understanding of the effect of Frescos Tomver acquiring a judgment against Jimenez personally is the potential for the Warehouse changing hands; (iv) that he was aware that Jimenez had personally guaranteed the Debtor's loan from Inter National Bank on the Warehouse property; (v) that he could not recall Jimenez being physically present at the Debtor's office in approximately the last two (2) months; (vi) that he believed Jimenez to currently be on a ranch in Mexico and has seldom spoken with him of late;

(vii) that he believed that Jimenez had considered growing produce prior to Jimenez's current undertaking, but did not do so, because he was unable to find credit to fund the undertaking; and (viii) admitted that the outstanding $8,809,156.60 of contributions by Jimenez, as reflected in Exhibits P-B and P-C, were essentially in limbo, considered neither a loan from nor capital to be paid to or capital contributions from Jimenez.

## VI.    Conclusions of Law

### a.   *Jurisdiction*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) & (2)(A) and 1334(b).  *See In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

### b.   *Venue*

Venue is proper pursuant to 28 U.S.C. §§ 1408(2) and 1409.

### c.   *Constitutional Authority*

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order in matters before it.  *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The Supreme Court held that a statute authorizing bankruptcy judges to issue final judgments violated Article III to the extent that it authorized such final judgments on certain matters.  *Stern*, 131 S. Ct. at 2616.  The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate.  *Id.* at 2618.  The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they

were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19.   Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality.   The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power.   *Id.* at 2620.   This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process.   In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy.   *See* 28 U.S.C. § 157.   However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments.   *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar arises from the Debtor's Motion to Extend The Automatic Stay to Jimenez, which is a matter that can only arise in bankruptcy.   Thus, this Court finds that it has the constitutional authority to grant or deny the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).

### d.  Analysis

There is no basis to extend the § 362 stay to the non-debtor defendant Jimenez.   Other than the similarity between Frescos Tomver's claims against the Debtor and its claims against the individual defendant Jimenez and the potential application of collateral estoppel, the record provides no basis to conclude that a judgment against the individual defendant Jimenez would in effect be a judgment against the Debtor.

The Automatic Stay provides protection to debtors when they file for bankruptcy.   11

U.S.C. § 362(a).  The Automatic Stay applies in different circumstances, but is "applicable to all

entities."  *Id.*; *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983).[4]  The

Automatic Stay prevents the "enforcement, against the *debtor or against property of the estate*,

of a judgment obtained before the commencement of the case under this title."  § 362(a)(2)

(emphasis added).  It further protects debtors by also prohibiting:

> "the commencement or continuation, including the issuance or employment of
>
> process, of a judicial, administrative, or other action or proceeding against the
>
> *debtor* that was or could have been commenced before the commencement of the
>
> case under this title, or to recover a claim against the *debtor* that arose before the
>
> commencement of the case under this title…"

11 U.S.C. § 362(a)(1) (emphasis added); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 435-6

(5th Cir. 2001) (stating that "[v]irtually any act attempting to enforce a judgment against or

obtain property from the estate of the debtor is stayed once the title 11 proceedings are

commenced").  The Automatic Stay also provides that "the stay of an act against property of the

estate under subsection (a) of this section continues until such property is no longer property of

the estate."  § 362(c)(1).  The earliest that an entity may continue their action against the debtor

is (1) "the time the case is closed;" (2) "the time the case is dismissed;" or (3) "the time a

discharge is granted or denied."  § 362(c)(2)(A-C).  However, the protections of § 362 for

debtors in a single or joint case is qualified.  § 362(c)(3)[5]; *In re Toro-Arcila*, 334 B.R. 224

---

[4] Qualifying the application of the stay applying to all entities by stating that it applies "in the sense that it stays all entities proceeding against the debtor."

[5] § 362(c)(3) states that "a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case [and] on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the

(Bankr. S.D. Tex. 2005); *In re Charles*, 334 B.R. 207 (Bankr. S.D. Tex. 2005).  Creditors are not left without recourse from the Automatic Stay, as § 362 provides an avenue for relief from stay when the court finds cause to justify terminating, annulling, modifying, or conditioning the stay or in the instance where the court finds that "such property [of the Debtor] is not necessary to an effective reorganization."  § 362(4)(d)(1-2).  When relief from stay is requested under §§ 362(d)[6] or (e),[7] the movant has the burden of proof to demonstrate "the issue of the *debtor's* equity in the property" and the non-movant has the burden of proof for all other issues.  § 362(4)(g) (emphasis added); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365(1988)[8]; *In re Canal Place Ltd. P'ship.*, 921 F.2d 569 (5th Cir. 1991);[9] *Beran v. World Telemetry, Inc.* 747 F.Supp.2d 719, 722-23 (S.D. Tex. 2010).  The common theme under § 362 "[is] to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse."  *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985); *see also In Re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987) (discussing § 362 and its role in the bankruptcy process).

However, the protections of § 362's automatic stay are generally not extended beyond the debtor, because § 362 "is rarely … a valid basis on which to stay actions against non-debtors." *Arnold*, 278 F.3d at 436.  The Fourth Circuit has recognized an exception to the debtor-only

---

court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed . . ."

[6] § 362(d) states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay …"

[7] § 362(e)(1) provides a 30-day reprieve upon a request under § 362(d) absent a hearing by the court and § 362(e)(2) provides 60 days when the debtor is an individual that filed under Chapter 7, 11, or 13 of the Code absent a hearing by the court or the time period is extended by agreed order.

[8] The Supreme Court stated that "[o]nce the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'"

[9] The Fifth Circuit stated that "[i]n every case where a creditor seeks relief under § 362(d)(2), the creditor has the burden to establish the lack of equity in the property and the debtor has the burden to establish that the property is necessary for an effective reorganization."

application of § 362 in the circumstances where non-debtors are co-defendants with the debtor and "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).  In order to find an identity of interest between bankrupts and non-bankrupts, the *A.H. Robins Co.* court reasoned that there must be both "unusual circumstances" and "something more than the mere fact that one of the parties to the lawsuit has filed [for bankruptcy]..." *Id.* at 999.  The *A.H. Robins Co.* court provided an example of the type of situation that would qualify as one where "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.*  In the case at bar, Debtor provided no such evidence to support a claim that Jimenez would be entitled to absolute indemnity by the Debtor.  The Fifth Circuit has recognized the *A.H. Robin Co.*'s exception to the general rule, but the application has been limited[10] due to the stringent factual requirements necessary to warrant the extension of the stay to a non-debtor.  *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003);[11] *see also Arnold*, 278 F.3d at 435-36, 439-40; *Feld v. Zale Corp. (In Re Zale Corp)*, 62 F.3d 746, 761-62 (5th Cir. 1995); *Edwards v. Armstrong World Industries*, 6 F.3d 312, 316-17 (5th Cir. 1993)*, rev'd on other grounds*, 514 U.S. 300 (1995); *In re S.I. Acquisitions*, 817 F.2d at 1147-48; *In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007) ("Section 362(a) operates to stay only actions against *bankruptcy petitioners* and *their property*" in regard to the plaintiff's attempt to collect past due payments for natural gas sold to various debtors) (emphasis added).

---

[10] As of the date of this opinion, the Fifth Circuit has cited the *A.H. Robins Co.* case a total of fourteen (14) times.

[11] The Fifth Circuit in *Reliant Energy Services, Inc.* stated that "[t]his Court recognized the *A.H. Robins Co.*'s exception in *Arnold*, but declined to extend it in that case because no claim of a formal tie or contractual indemnification had been made to create an identity of interests between the debtor and nondebtor."

In *TXNB Internal*, Edge Petroleum Operating Company, Inc. ("Edge") sued Duke Energy Trading and Marketing, LLC ("Duke") for payment of gas sold to a debtor's subsidiary, among others, who then delivered the gas to Duke to offset an overpayment. *Id.* at 296. The case was removed to the district court due to the bankruptcy filed by Aurion Technologies, LLC, the majority shareholder of Aurora Natural Gas, LLC ("Aurora"), which had purchased the gas from Edge. *Id.* However, the United States District Court for the Southern District of Texas ruled that the Duke matter was related to the bankruptcy by Aurion Technologies, LLC and the case was transferred to the United States District Court for the Northern District of Texas. *Id.* at 297. After the transfer, Edge consented to the jurisdiction of the bankruptcy court, which held that Edge was automatically stayed in the pursuit of their claim against Duke and declined to grant leave from the stay. *Id.* at 296. In reviewing the lower court decisions, the Fifth Circuit found that since Edge's claim "against Duke lies against a non-debtor and does not implicate the property of the debtors, the bankruptcy court erred by staying it." *Id.* at 301. The Fifth Circuit, in analyzing § 362, found that while the section contains "a long list of actions that are stayed by the filing of a bankruptcy petition … actions not directed against the debtor or property of the debtor" are not among them. *Edge Petroleum Operating Co.*, 483 F.3d at 301. According to the Fifth Circuit, the bankruptcy court "misinterpreted Edge's claim" and the claim truly "is against the proceeds of Duke's sale of the gas to third parties (the sale that, according to Edge, cut off its lien on the gas) rather than against any accounts receivable by the debtors." *Id.* at 302. Thus, as Edge's claims did not lie against the debtor, it was not subject to the automatic stay. *Id.*

A sister court similarly applied the standards recited above when reviewing whether the automatic stay should be extended to a non-debtor co-defendant in a civil case. *In re Xenon*

*Anesthesia of Texas, PLLC*, 510 B.R. 106, 111 (Bankr. S.D. Tex. 2014).[12]  *Xenon Anesthesia* is factually similar to the instant case.  In *Xenon Anesthesia*, the managing member of the debtor, a limited liability company, sought to have the automatic stay extended due to potential liability from a criminal contempt hearing, as opposed to civil liability in the instant case, against the non-debtor member.  *Id.* at 109-12.  The *Xenon Anesthesia* court determined that the Debtor "failed to establish that assets of the bankruptcy estate would be at risk in allowing the state court to proceed with its criminal contempt hearing…"  *Id.* at 110.

In order to extend the Automatic Stay to a non-debtor, a court must find an identity of interest between the debtor and the non-debtor, and then evaluate whether the circumstances warrant exercising the "general discretionary power … to stay proceedings in the interest of justice and in control of their dockets."  *Wedgeworth*, 706 F.2d at 545; *In re Atlantic Ambulance Associate, Inc.*, 166 B.R. 613 (Bankr. E.D. Va. 1994).  However, the proper use of this discretionary power requires "weigh[ing] competing interests and maintain[ing] an even balance."  *Id.* (citing to *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).  The Supreme Court in *Landis* provided guidance for what is required in order to invoke the discretionary power of a court by placing the burden of justification on the movant.  *Landis v. North American Co.*, 299 U.S. 248, 255 (1936);[13] *Wedgeworth*, 706 F.2d at 545.

In the instant case, the Debtor argued that "it is necessary to extend the automatic stay" to

---

[12] Stating that "[i]n order to invoke the automatic stay as to actions against a non-debtor, the party seeking to do so must show that there is such identity between the debtor and the non-debtor that the debtor may be said to be the real party defendant and that a judgment against the non-debtor will in effect be a judgment or findings against the debtor."  *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir.2001); *GATX Aircraft Corp. v. M/V Courtney *112 Leigh*, 768 F.2d 711, 717 (5th Cir.1985); *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir.2003).

[13] The Supreme Court discussion included that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.  True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."

Jimenez in order to avoid an "adverse, and likely irreconcilable, economic effect on the Debtor's estate." [Case No. 15-70405, ECF No. 12, ¶ 11]. The Debtor's support for this argument lies with the unresolved nature of the proceedings in the District Court case between Frescos Tomver and Jimenez. *Id.*

In considering the relationship between Jimenez and the Debtor, this Court, in addition to the scant evidence and testimony taken at the hearing, first looked to the Debtor's petition and schedules, but these documents do not include any hints of contributions from Jimenez, as they would be superfluous. *Compare* Ex. R-1 *with* ECF No. 12, ¶¶ 11 and 28. The Debtor's Statement of Financial Affairs, [ECF No. 21, p. 24-31], provides that the Debtor's current business is the leasing of cold storage space in the Warehouse to third party tenants, but noticeably fails to mention the sale or brokerage of produce in line with the testimony of Mr. Zuniga on the expected future operations. Additionally, although Mr. Zuniga testified that he was the Debtor's accountant, the Debtor's Statement of Financial Affairs indicates that the books and records are kept by a different firm altogether. [ECF No. 21, p. 19]. The testimony provided by the Debtor's "representative," Mr. Zuniga, did not shed much certainty on Jimenez's potential contributions to effectuate the Debtor's reorganization aside from what Mr. Zuniga had heard from Jimenez, but did not have any personal knowledge of, regarding operations in Mexico. *Supra* Part IV.5. Moreover, the Debtor's records of Jimenez's historical contributions were mired by the disheveled state of the Mexican accounting records. Exhibit P-B. The Debtor's Mexican accounting records provide an incomplete picture of Jimenez's prior activities regarding operations in Mexico that bore some relationship to the Debtor, albeit more closely resembling that of a broker relationship, where Jimenez, according to Mr. Zuniga, had invested in operations where his return would be in produce rather than currency. The testimony by Mr.

Zuniga did demonstrate that Jimenez uses the Debtor as a conduit for his operations, including the payment of certain personal expenses that the Debtor failed to disclose in its Statement of Financial Affairs as a withdrawal, transfer, or distribution to an insider within the prior year.  Ex. P-K, p. 26 and 30.  The way in which Jimenez used the Debtor for his operations seems contrary to what the Texas legislature intended to qualify as contributions, as the benefit derived from Jimenez's deals did not inure to the Debtor, but rather flowed through to Jimenez.  *Compare* Exhibit P-B *and* Findings of Fact 21.g *with* TEX. BUS. ORGS. CODE ANN. § 1.002(9) (West 2015);[14] *see also* Nicholas G. Karambelas, *Limited Liability Companies: Law, Practice and Forms* § 7.2 (2d ed. 2015); J. William Callison & Maureen A. Sullivan, *Limited Liability Companies:  A State-by-State Guide to Law and Practice* (2015).  Furthermore, the Debtor's schedules fail to disclose any debts owed by Jimenez in Schedules D, E, or F as might be expected of a small business in need of support from its sole member, yet the Debtor claims in its exhibits that Jimenez has substantially contributed to the support of the company and Mr. Zuniga testified that Jimenez's contributions are unclassified at this time, amounting to voodoo accounting.  Ex. P-K and P-B.  This dichotomy supports Frescos Tomver's averment that it is being solely targeted as a creditor of the Debtor, despite a plethora of other creditors, and that a judgment against Jimenez would have no impact on the Debtor.

In total, Mr. Zuniga's testimony gave a glimpse of the disarray present in the Debtor's financial condition, such that this Court could hardly distinguish the efforts of Jimenez on his own accord from those on behalf of the Debtor.  Ex. P-B.  The circumstances presented could

---

[14] "Contribution" means a tangible or intangible benefit that a person transfers to an entity in consideration for an ownership interest in the entity or otherwise in the person's capacity as an owner or a member. The benefit includes cash, services rendered, a contract for services to be performed, a promissory note or other obligation of a person to pay cash or transfer property to the entity, or securities or other interests in or obligations of an entity, but does not include cash or property received by the entity:

> (A) with respect to a promissory note or other obligation to the extent that the agreed value of the note or obligation has previously been included as a contribution; or
> (B) that the person intends to be a loan to the entity.

hardly be a more ripe ground to pierce the corporate veil of the Debtor to Jimenez, but not the inverse, as the operations of the Debtor appear to have been unhampered by the lack of activity by Jimenez in recent years, contrary to the Debtor's argument of Jimenez's necessitude to the Debtor to remain a going concern.  *See generally* Part IV; ECF No. 21, p. 24 (providing income for 2013 to present).  Surely, the facts present in the instant case are not what the *A.H. Robins Co.* court and this Court would consider "unusual circumstances," consistent with the Fifth Circuit's treatment of the matter, presenting such an identity of interest between the debtor and non-debtor as to warrant exercising the extraordinary powers of 11 U.S.C. § 105 for extending the automatic stay to a non-debtor.  *Reliant Energy Servs., Inc.*, 349 F.3d at 825; *see also Arnold*, 278 F.3d at 435-36, 439-40; *In Re Zale Corp*, 62 F.3d at 761-62; *Edwards*, 6 F.3d at 316-17; *In re S.I. Acquisitions*, 817 F.2d at 1147-48; *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 110.

The Debtor attempts to further support its position in the Motion by claiming that the "Movant Debtor is responsible for all acts of its operating member under the principle of Respondeat Superior."  [ECF No. 12, ¶ 22].  However, the Debtor did not offer any evidence as to how Jimenez has bound the Debtor under the principle of Respondeat Superior[15] and thus, absent support,[16] there is no basis for this Court to consider application of its discretionary powers.  *Id.*; *see also* Robert W. Wood, *Limited Liability Companies: Formation, Operation &*

---

[15] *Respondeat superior*, BALLENTINE'S LAW DICTIONARY (3d ed. 1969).
    (1)  The doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment.
    (2)  The tort liability of a principal for the act of his agent is based, not on the agency relationship, but on the relation of employer and employee, and is expressed by the maxim "respondeat superior."

[16] "Texas follows the doctrine of respondeat superior and thus holds private employers liable for the torts committed by their employees in the course and scope of their employment."  *Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995).

*Conversion* § 2.05 (3d ed. 2014).[17]  *Contra* ECF No. 23, ¶ 11 (stating that "[t]he claims against Jimenez are personal to him").   The testimony of Mr. Zuniga also failed to substantiate the potential of Respondeat Superior applying to the Debtor, other than vis–à–vis his belief that the Debtor's warehouse might be threatened by Frescos Tomver's acquisition of a personal judgment against Jimenez, when he testified that Jimenez is not an employee of the Debtor.  The absence of Jimenez at the hearing made the substantiation of the Debtor's claim all that much more difficult due to the adumbrated state of the Debtor's operations.  The Fifth Circuit has stated that a § 362 stay should extend to non-bankrupt codefendants only when there is a formal or contractual relationship between the debtor and non-debtors such that a judgment against one would in effect be a judgment against the other. *See Garlock,* 278 F.3d at 436 (rejecting argument that nonbankrupt asbestos codefendant facing the same allegations as bankrupt codefendant was entitled to stay and reasoning that "[the non-bankrupt defendant] is one of scores of different asbestos makers, users, importers, etc., with no interest to establish such an identity with [the debtor]" because "[t]here is no claim of a formal tie or contractual indemnification to create such an identity of interests"); *GATX,* 768 F.2d at 717 (the district court extended the § 362 stay to nondebtor guarantors after one guarantor declared bankruptcy; the appellate court reversed, reasoning that "[t]o prevent or delay GATX from enforcing its rights in a situation foreseen by it and contractually provided for with each guarantor would be ... legally inequitable"); *Reliant Energy Servs.,* 349 F.3d at 825 (overturning district court's extension of a § 362 stay to Enron Canada in a breach of contract dispute involving four other bankrupt Enron

---

[17] In discussing liability for breach of contract, "assuming there is a valid contract, if it is executed by an agent of the business, then the business is primarily liable. The business can be sued for damages due to breach of the contract. … One fundamental point that deserves re-emphasis is that even an LLC will not free the owners of the LLC from liability if the third party insists on individual contractual liability. The classic example would be a contract or lease entered into by the LLC, but as to which a personal guaranty of the LLC's owner is required. Here, the LLC would have primary liability, but the individual guarantor would have secondary liability."

parties facing similar allegations because there was no finding of a "formal tie or contractual identification ... to create an identity of interests").   Under these cases, the presence of identical allegations against the debtor and non-debtor defendants is an insufficient ground to extend the stay to the non-debtor Jimenez. There must be an actual, as opposed to an alleged or potential, identity of interests, such that a judgment against the non-bankrupt party would in fact be a judgment against the bankrupt party. The individual defendant Jimenez has not demonstrated such a relationship and has not carried his burden to demonstrate that the § 362 stay may be extended to him.

Accordingly, given the foregoing reasons, this Court finds that the Debtor has not provided evidence of either element of the *A.H. Robins Co.* test for establishing cause to extend the protections of § 362 to a non-debtor party, as the Debtor has not demonstrated "unusual circumstances" or "something more than the mere fact that one of the parties to a lawsuit has filed a Chapter 11 bankruptcy…"  Thus, absent the justification under the *A.H. Robins Co.*'s test, as discussed and adopted by the Fifth Circuit, this Court cannot stay proceedings of a non-bankrupt co-defendant.  *Reliant Energy Servs., Inc.*, 349 F.3d at 825; *Arnold*, 278 F.3d at 435-36, 439-40; *In Re Zale Corp*, 62 F.3d at 761-62; *Edwards*, 6 F.3d at 316-17; *In re S.I. Acquisitions*, 817 F.2d at 1147-48; *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 110.  Therefore, the Debtor's Motion to Extend the Automatic Stay as to Jimenez is hereby **DENIED**.

### e.   *Frescos Tomver's Request for Recovery of Attorneys' Fees and Costs*

Frescos Tomver's Response included a request for the recovery of attorneys' fees and costs based on the belief that the Motion filed by Debtor was frivolous.  [Case No. 15-70405, ECF No. 23, ¶ 40].  The Supreme Court recently discussed the issue of the recovery of fees and

costs by parties, in an application of the "American Rule"[18] in circumstances where statutory authorization is not explicitly provided for. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). The American Rule, as applied here, requires that Frescos Tomver be responsible for their legal costs unless there is a provision in the Code to provide for attorney's fees and costs. *Id.*[19] The Court reasoned in *Baker Botts* that deviations from the American Rule may take different forms, but they "usually refer to a 'prevailing party' in the context of an adversarial action." *Id.* Frescos Tomver relies upon a construction of 28 U.S.C. § 1927[20] as its sole basis for statutory authorization of attorney's fees based on its belief that Debtor's motion is "vexatious and calculated to cost Frescos Tomver needless attorneys' fees and expenses." [ECF No. 23, ¶ 40]. This Court is not prepared to find that a debtor seeking to assert its rights under the Bankruptcy Code meets the standard of "unreasonable and [vexatious]" as required by § 1927. Therefore, Frescos Tomver has not availed itself of a suitable statutory provision for this Court to grant the relief it requested, and an application of the American Rule, consistent with *Baker Botts*, requires that this Court deny its request. *Baker Botts L.L.P.*, 135 S. Ct. at 2164, 2169.

Furthermore, Frescos Tomver's request does not comport with the requirements of Fed. R. Bankr. P. 9011. Rule 9011 provides the framework for the consideration of sanctions on the basis of, among other items, a frivolous filing by a party. Fed. R. Bankr. P. 9011(b)(2).[21] This

---

[18] The "American Rule" is where "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010).

[19] The Supreme Court relied on precedent in finding that "departures from the American Rule only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260 (1975) (internal quotations omitted).

[20] Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

[21] Fed. R. Bankr. P. 9011(b)(2) provides that "[b]y presenting to the court a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claims, defenses, and other legal

Court is empowered to award sanctions so long as the sanction imposed is sufficient to deter the malfeasance perpetrated by the offending party.  Fed. R. Bankr. P. 9011(c)(2).  However, the party seeking sanctions is required to file a motion for sanctions separate from any other motions or requests, that motion must be served on the opposing party, and the opposing party has 21 days in order to respond by withdrawal, correction, or if no wrongdoing has been committed then no action is required.  Fed. R. Bankr. P. 9011(c)(1).  Frescos Tomver's Request for Recovery of Attorneys' Fees and Costs does not comport with the requirements of Fed. R. Bankr. P. 9011, nor does Frescos Tomver provide adequate justification under § 1927, and as such its request cannot be granted.  Accordingly, the Request for Recovery of Attorneys' Fees and Costs is **DENIED**.

## VII.  Conclusion

The Debtor moved for this Court to provide extraordinary relief, so that Debtor's reorganization would not be allegedly impeded by Frescos Tomver's lawsuit being permitted to proceed against Jimenez individually.  [ECF No. 12].  The rationale offered by the Debtor was that the Automatic Stay was necessary so that Jimenez could contribute to the Debtor's reorganization efforts, but the Debtor's evidence, or lack thereof, testimony of its sole witness, and its own petition and schedules do not support this concept.  *Compare* Ex. P-K *and* Ex. R-1 *with* Ex. P-B.  This Court is constrained by the guidance provided by the Fifth Circuit in *Arnold* and *Reliant Energy Services, Inc.* in supporting the *A.H. Robins Co.* exception for the extension of the stay to non-debtors that "unusual circumstances" or "something more than the mere facts that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order

---

contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

that proceedings be stayed against non-bankrupt parties."[22]  *E.g., Reliant Energy Servs., Inc.*, 349 F.3d at 825; *Arnold*, 278 F.3d at 436.  As the Debtor's exhibits and witness testimony in support of its Motion to Extend the Automatic Stay provide no evidentiary support on either basis of the *A.H. Robins Co.* test, this Court cannot provide the relief requested.  As such, the Debtor's Motion to Extend the Automatic Stay to Jimenez is denied.

The Request for Recovery of Attorneys' Fees and Costs by Frescos Tomver, [ECF No. 23, ¶ 40], does not comply with the American Rule or the requirements of Fed. R. Bankr. P. 9011 and is therefore denied.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 09/23/2015.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[22] *A.H. Robbins Co.*, 788 F.2d at 999.