

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
07/21/2016

IN RE:                              §
DIVINE RIPE, L.L.C.                 §          CASE NO: 15-70405
        Debtor                      §
                                    §          CHAPTER  11
                                    §

**MEMORANDUM OPINION**
**SUSTAINING FRESCOS TOMVER, S.A. DE C.V.'S**
**OBJECTION TO DISCLOSURE STATEMENT**
**AND**
**DENYING DEBTOR'S MOTION TO APPOINT SAUL ZUNIGA AS DESIGNATED**
**REPRESENTATIVE OF DIVINE RIPE, L.L.C. PURSUANT TO FEDERAL**
**BANKRUPTCY RULE 9001(5)(A)**
*[Resolving ECF Nos. 68 and 105]*

## I.    INTRODUCTION

Pending before this Court are two motions.  The first motion, filed by Frescos Tomver,

S.A. DE C.V. ("***Frescos Tomver***"), an unsecured creditor, is self-styled as "Objection to

Disclosure Statement," [ECF No. 105] (the "***Objection***"), which alleges that the Debtor's

Disclosure Statement, [ECF No. 93] ("***Disclosure Statement***"), does not contain adequate

information on certain aspects of the Debtor's Plan of Reorganization:  Information on Marco

Jimenez's financial capabilities and Information about certain aspects of the Debtor.  In addition,

Frescos Tomver objects on the premise that Debtor's plan would be violative of federal law.

In the second, filed by the Debtor, is self-styled as "Motion to Appoint Saul Zuniga as

Designated Representative of Divine Ripe, L.L.C. Pursuant to Federal Bankruptcy Rule

9001(5)(A)." [ECF No. 68] ("***Motion to Appoint***").  The Motion to Appoint sought approval of

this Court for the Debtor to appoint Saul Zuniga, an employee of the Debtor, as the Designated

Representative.  *Id.*  This Court considers the Objection, the Motion to Appoint, the argument

presented in hearings on this matter held February 12, 2016, February 22, 2016, and April 12,

2016, all other evidence in the record, and relevant case law, and determines that the Objection should be **SUSTAINED**, as such Debtor's Disclosure Statement is **NOT APPROVED**, and that the Motion to Appoint should be **DENIED**.

## II.    PROCEDURAL BACKGROUND

On October 16, 2013, Frescos Tomver initiated a lawsuit against Divine Ripe, L.L.C. (the "***Debtor***") and Marco Antonio Jimenez ("***Jimenez***"), claiming violations under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq*, breach of contract, and breach of fiduciary duty in the United States District Court for the Southern District of Texas in McAllen, TX. [Case No. 7:13-cv-00577, ECF No. 1].  The Debtor filed its Motion to Extend the Automatic Stay as to Jimenez with Respect to Certain Pre-Petition Litigation, which this Court denied.  *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 314 (Bankr. S.D. Tex. 2015); [ECF No. 50]. Subsequently, Frescos Tomver continued to pursue Jimenez in the Civil Case, which included noticing Jimenez for a deposition related to his role with the Debtor.  [ECF No. 63 at ¶¶ 7, 22]. Frustrated by the alleged evasive, to put it mildly, conduct of Jimenez, Frescos Tomver brought its Motion to Dismiss or Convert to rectify what it views as bad faith behavior.  *Id.* at ¶¶ 15-23. Debtor subsequently sought to appoint Saul Zuniga ("***Zuniga***"), an employee of the Debtor, as its Representative, a move opposed by Frescos Tomver.  [ECF Nos. 68, 76].  This Court conducted a hearing on the Debtor's motion seeking to appoint Zuniga on February 12, 2016, that was continued to February 22, 2016, when this Court conducted a hearing on Frescos Tomver's Motion to Dismiss or Convert as well as the continued motion.  This Court took both motions under advisement, where the Motion to Dismiss or Convert remains.  The instant matter involves Frescos Tomver's Objection and Debtor's Motion to Appoint.

### III.   FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

For the purposes of this Memorandum Opinion, this Court adopts each of the Findings of Fact in this Court's Memorandum Opinion Denying Debtor's Motion to Extend Stay to Non-Debtor Marco Jimenez with Respect to Certain Pre-Petition Litigations, [Case No. 15-70405, ECF No. 49 at 3-9], and incorporates each into this Memorandum Opinion.  *See also In re Divine Ripe, L.L.C.*, 538 B.R. at 303-05.

On September 15, 2015, this Court heard the parties' arguments on Debtor's Motion to Extend the Automatic Stay as to Marco Jimenez, [ECF No. 12].  This Court denied Debtor's Motion.  *In re Divine Ripe, L.L.C.*, 538 B.R. at 314; [ECF No. 50].  On December 22, 2015, Frescos Tomver filed its Motion to Dismiss or Convert.  [Case No. 15-70405, ECF No. 63] ("**MTD**").  In the Motion, Frescos Tomver averred significant misconduct by Jimenez in not only the Civil Case, but also in the bankruptcy case.  *Id.* at ¶¶ 5-7, 8-14, 20-22.

On January 15, 2016, Debtor filed its Motion to Appoint on an expedited basis that requested this Court to approve the appointment of Zuniga as the representative for the Debtor. [ECF No. 68 at ¶ 8]; *see also* [ECF No. 70].  Frescos Tomver filed its Objection to Motion to Appoint Zuniga as Designated Representative of Divine Ripe, L.L.C. Pursuant to Federal Bankruptcy Rule 9001(5)(A).  [ECF No. 76] (the "**Response**").  Frescos Tomver objected on two interrelated bases:  (1) Zuniga testified that "he was neither an officer nor a director of the Debtor"; and (2) the Debtor's Articles of Incorporation preclude managers and the Debtor has

not evinced a change in this policy, therefore Jimenez is solely responsible for control and management of the Debtor.  *Id.* at ¶¶ 1-4.

On February 12, 2016, this Court conducted an evidentiary hearing on Debtor's Motion to Appoint.  Zuniga testified extensively regarding Debtor's operations, and his knowledge about the ability of Jimenez to enter the United States, conducting the business of Debtor, and Jimenez's authorizations of Zuniga for his role in Debtor's operations.  This Court continued that hearing to February 22, 2016, at which time the hearing would be concluded contemporaneously with a hearing on the MTD.  In addition, Debtor's representative, Jimenez, was ordered to be physically present to provide testimony to show cause as to why the Debtor's bankruptcy should not be dismissed or converted.  [ECF No. 84].

On February 22, 2016, Debtor filed its Disclosure Statement, [ECF No. 93], and Plan of Reorganization, [ECF No. 94] (the "***Plan***"), prior to the hearing to be conducted that same day. This Court entered an order scheduling a hearing on the Disclosure Statement, which was reset to April 12, 2016.  Frescos Tomver filed its Objection to Disclosure Statement on April 5, 2016. [ECF No. 105] (the "***Objection***").   In its Objection, Frescos Tomver stated that there were multiple deficiencies of adequate information in several sections of the Disclosure Statement as the basis for its objecting and also that the Plan provisions violate PACA due to its licensing requirements.  *Id.*

Also on February 22, 2016, this Court conducted an evidentiary hearing on the MTD and continued Motion to Appoint.   At the hearing, Jimenez appeared and testified extensively regarding the anticipated operations of his tomato cultivation in the State of Jalisco, Mexico. Jimenez also testified regarding the anticipated profits of that tomato cultivation and how Debtor would benefit.  While the hearing was ongoing, the Court ordered Zuniga removed from the

courtroom because he appeared to be assisting or coaching, via gesturing, Jimenez on his testimony. [ECF No. 112 at 53]. The Court is uncertain how much, if any, assistance Jimenez received prior to Zuniga being observed and the extent to which Jimenez's testimony is colored by such assistance as he did receive. Thus, this Court finds that Jimenez's testimony is less credible given the observed and potentially unobserved assistance rendered by Zuniga.

On April 12, 2016, this Court conducted an evidentiary hearing on the Disclosure Statement (the "*Hearing*"). At the Hearing, Counsel for Debtor and Frescos Tomver were present and presented argument on the Disclosure Plan and the Objection. No witnesses were called to present testimony.

1. Exhibits at the Hearing:

    a. Debtor's counsel offered and admitted

        i. Exhibit B: Notice of Deposition for Divine Ripe LLC
        ii. Exhibit D: Cash Collateral Order, [ECF No. 45].
        iii. Exhibit E: IDI Designation by Jimenez
        iv. Exhibit F: Divine Ripe, L.L.C. Article of Organization
        v. Exhibit H: Loan Modification
        vi. Exhibit I: Disclosure Statement, [ECF No. 93], and Plan, [ECF No. 94], including all attached exhibits and incorporating any amendments.
        vii. Exhibit K: Lease Contracts

    b. Frescos Tomver did not offer any exhibits.

2. Both parties presented extensive arguments on the virtues of the Disclosure Statement, in the case of the Debtor, or the lack thereof, in the case of Frescos Tomver.

## IV.   LEGAL STANDARD

### a. Disclosure Statements

Rule 3016(b) requires that a disclosure statement be filed with a plan of reorganization or alternatively, at a time set by the court. Fed. R. Bankr. P. 3016(b). A disclosure statement must

contain "adequate information" about the debtor and be provided to "each holder of a claim or interest of a particular class."   11 U.S.C. § 1125(c).   Section 1125 broadly defines adequate information to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan…

11 U.S.C. § 1125(a)(1); *see also In re Cajun Elec. Power Co-op, Inc.*, 150 F.3d 503, 518 (5th Cir. 1998) (citing to the legislative history, which, in essence, is a case-by-case determination as to what constitutes adequate information for the particular debtor involved); *In re Ashley River Consulting, LLC*, 2015 WL 6848113, at *1, *7-8 (Bankr. S.D.N.Y. Nov. 6, 2015) (discussing the basis for determining whether a disclosure statement has adequate information, including that the standard was left intentionally vague by Congress in order that courts may have a high degree of flexibility in applying the standard on a case-by-case basis).   In evaluating whether a disclosure statement contains adequate information, a court "shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information…"   § 1125(a)(1); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) (stating that "The determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court."); *see also In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 28-29 (S.D.N.Y 1995) (discussing the application of *Texas Extrusion*'s "adequate information" standard); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) ("What constitutes adequate information is to be determined on a case-specific basis under a flexible standard that

can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties."). The standard applied in *Texas Extrusion* was whether the information contained in the Disclosure Statement "was adequate to enable a reasonable creditor to make an informed decision about the Plan." *In re Texas Extrusion Corp.*, 844 F.2d at 1157. In *Westland Oil Development Corp. v. MCorp Management Solutions, Inc.*, the court enumerated certain items that a disclosure statement should contain, in order to provide adequate information:

    A. The events which led to the filing of chapter 11;
    B. A description of the available assets and their value;
    C. The scheduled claims;
    D. The estimated return to creditors under a chapter 7 liquidation; and
    E. Litigation likely to arise in a non-bankruptcy context.

157 B.R. 100, 102-03 (S.D. Tex. 1993) (Hughes, J.) (citing to *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984)). In reviewing the matter in *Westland*, the court stated the purpose of § 1125's disclosure standard is to "protect creditors from a debtor who may be trying to hide assets" and to "maximize court efficiency by short-cutting attempts … to litigate what should have been disposed of [previously]." *Id.* (citing to *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 422 (3rd Cir. 1988) (Stapleton, J., dissenting)). Another bankruptcy court stated the "[d]isclosure of all factors is not necessary in every case" after listing all of the *Metrocraft* factors. *In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996). The depth of the information presented in the disclosure statement "need not resemble a registration statement or prospectus required under the Securities Act of 1933," but rather be reasonably practicable based on the circumstances of the debtor. 6 Norton Bankr. L. & Prac. 3d § 110:4; *see also, e.g.,* 7-1125 Collier on Bankruptcy P 1125.01 (15th 2015) ("Ultimately the bankruptcy court will determine whether the requirement of "adequate information" has been met, and the court in making the determination is required to consider the complexity of the case and to

conduct a cost-benefit analysis, weighing the benefit of "additional information" against the cost of providing such information. The statute does not indicate what constitutes "additional information.").

This Court adopts the *Metrocraft* factors, non-exhaustively, as factors to consider for the purposes of determining the sufficiency of "adequate information" in a disclosure statement. The *Metrocraft* factors are:

> (1) the events which led to the filing of a bankruptcy petition;
> (2) a description of the available assets and their value;
> (3) the anticipated future of the company;
> (4) the source of information stated in the disclosure statement;
> (5) a disclaimer;
> (6) the present condition of the debtor while in Chapter 11;
> (7) the scheduled claims;
> (8) the estimated return to creditors under a Chapter 7 liquidation;
> (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
> (10) the future management of the debtor;
> (11) the Chapter 11 plan or a summary thereof;
> (12) the estimated administrative expenses, including attorneys' and accountants' fees;
> (13) the collectability of accounts receivable;
> (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
> (15) information relevant to the risks posed to creditors under the plan;
> (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
> (17) litigation likely to arise in a nonbankruptcy context;
> (18) tax attributes of the debtor; and
> (19) the relationship of the debtor with the affiliates.

*In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *see also In re U.S. Brass Corp.*, 194 B.R. at 424-25; *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) (adopting a list of factors to consider when evaluating disclosure statements, but the list is only "but a yardstick against which the adequacy of disclosure may be measured"). *C.f. In re Cypresswood Land Partners, I*, 409 B.R. 396, 424 (Bankr. S.D. Tex. 2009) (stating that the disclosure statement at bar had "met the *Metrocraft* standard").

In addition to providing adequate information, the Plan, as disclosed within the Disclosure Statement, must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).   The Code does not specifically relate the context in which "means" should be viewed, as it could be referring to the means of proposing a plan, the plan provisions, or the manner in which the plan provisions will be carried out.   William L. Norton, Jr. and William L. Norton, III, eds., Norton Bankruptcy Law and Practice, 3d ed. § 112:10;   *In re Sovereign Grp., 1984-21 Ltd.*,   88 B.R. 325, 328, 331 (Bankr. D. Colo. 1988) (stating that § 1129(a)(3) governs the "manner in which the plan is proposed and not its substantive provisions").   This Court, in a prior opinion, relied upon this view of § 1129(a)(3) in determining whether the provisions of the plan in that case were confirmable.   *See In re Star Ambulance, LLC*, 540 B.R. 251, 262 (Bankr. S.D. Tex. 2015) (stating that "[§ 1129(a)(3)] does not require the bankruptcy judge to determine whether the ends achieved in the plan contravene non-bankruptcy law); *see also In re Ocean Shores Cmty. Club, Inc.*, 1991 WL 184827, at *2 (9th Cir. 1991).   The Fifth Circuit in *Matter of T-H New Orleans Ltd. Partnership* stated that § 1129(a)(3)'s requirement must be "viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan…" 116 F.3d 790, 802 (5th Cir. 1997) (citing to *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985)); *see also Matter of Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 519 (5th Cir. 1998) (discussing how, in the instant case, that the "plan proponent [did] not propose a plan 'by any means forbidden by law'").

### b.  Debtor and Other Person in Control

Rule 9001 sets forth certain defined terms for use in conjunction with other defined terms established.  Fed. R. Bankr. P. 9001.  Among these terms is "Debtor," which states:

> When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a

natural person: (A) if the debtor is a corporation, "debtor" includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, *or any other person in control*; (B) if the debtor is a partnership, "debtor" includes any or all of its general partners or, if designated by the court, any other person in control.

Fed. R. Bankr. P. 9001(5) (emphasis added). Rule 9001 casts a very wide net as to who can act on behalf of a debtor, especially when considering the non-exhaustive use of *any other person in control*. *Id.*; *see also In re Red River Energy, Inc.*, 409 B.R. 163, 175-76 (Bankr. S.D. Tex. 2009) (discussing how person can be defined, pursuant to 11 U.S.C. § 101(41), to include "any other 'individual' in control, or any other 'partnership' in control, or any other 'corporation' in control). Thus, as an individual or entity can constitute a person, the matter at hand for the catchall is the level of influence that is required to constitute a person *in control*. The term "control" has not been defined in the Code or Rule 9001, but the emphasis in bankruptcy is that the "person in control" should be the person[1] that best represents an embodiment of knowledge of the debtor's affairs and be in control of the debtor. *See In re Red River Energy, Inc.*, 409 B.R. at 181-82; *In re Muy Bueno Corp.*, 257 B.R. 843, 847-49 (Bankr. W.D. Tex. 2001) (stating that "[t]he structure of the Code (and its implementing rules) is designed to assure that creditors, the court and court-appointed representatives will have ready and early access to correct information about the corporate debtor's affairs."). In Texas, a limited liability company is governed, or controlled, by managers or members of the company based on which option the certificate of formation elects. *See* TEX. BUS. ORGS. CODE § 101.251. Furthermore, control, itself, has been defined as "exercis[ing] power or influence over" or "hav[ing] a controlling interest in" something or someone. *Control*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Control*,

---

[1] For the purposes of this Memorandum Opinion, any further reference to "person" shall constitute any of the acceptable individuals or entities as provided by 11 U.S.C. § 101(41).

BALLENTINE'S LAW DICTIONARY (3rd ed. 1969).[2]  *C.f. In re Red River Energy, Inc.*, 409 B.R. at 175 (discussing the requirements to be a controlling stockholder).  Therefore, in view of these varying definitions of control, this Court finds that an "other person in control" is a person, as contemplated in § 101(41), that exercises control over the debtor, or if in the event the debtor is a limited liability company, then it is by formal designation of the company's management or members, or has a controlling interest in the debtor such that the person or entity has authority in the direction and management of the debtor.

## V.    CONCLUSIONS OF LAW

### a.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see, e.g.,* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  This is a core matter for the purpose of § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core, because as § 157 enumerates a non-exclusive list of core matters including "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2).  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A).  *See In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

---

[2] Defining control, as a verb, as "to check, restrain, *govern*, have under command, and authority" and, as a noun, as "a position of authority in direction and management."

This Court may only hear a case in which venue is proper. Venue, with respect to cases under title 11, is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" In his petition, Debtor designates its principal place of business as Pharr, Texas. Therefore, venue is proper.

### b. Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). However, as the Fifth Circuit indicated in *Texas Extrusion*, entry of an order approving or denying a disclosure statement is not a final order because entry of such an order does not mark the end of litigation or a "final determination of the rights of the parties to secure the relief they seek." 844 F.2d at 1154-55; *see also In re Delta Produce, L.P.*, 2016 WL 945185, at *1, *6 (5th Cir. Mar. 11, 2016). As such, this Court's entry of an order on Frescos Tomver's Objection is an order that does not fall within the scope of orders that are potentially violative of *Stern*. The same can be said of this Court entering an order on the Debtor's Motion to Appoint as it does not alter the parties' rights, but merely touches on who may represent the Debtor.

### c. Debtor Failed to Include Adequate Information in the Disclosure Statement

Frescos Tomver's Objection to the Disclosure Statement, and subsequently the arguments presented at the Hearing, can be broken down to three different contentions: (1) the Disclosure Statement presented inadequate information regarding the efforts and financial situation of Jimenez; (2) the Disclosure Statement presented inadequate information regarding the Debtor itself; and (3) the Plan's provisions are partially violative of PACA. *See generally* [ECF No. 105]. Frescos Tomver does not complain in its Objection about every *Metrocraft* factor. *Id.*

Thus, this Court will analyze each of these contentions, in turn, that Frescos Tomver bases its Objection upon while keeping in perspective the relative complexity of Debtor's case and the benefit, should the additional information Frescos Tomver seeks, be available to creditors and other parties in interest.  Furthermore, this Court will analyze the remaining *Metrocraft* factors to fully examine whether Debtor has included adequate information in the Disclosure Statement.

### i.  **Adequate Information Regarding Jimenez**

The first issue centers on the Plan's provision of contribution from Jimenez towards the rehabilitation of the Debtor.  [Case No. 15-70405, ECF No. 105 at ¶¶ 7-12].  The Plan calls for contributions from Jimenez in the amount of $462,102.00 annually based on growing tomatoes in Jalisco, Mexico.  *Id.* at ¶ 7; *see also* [ECF No. 94 at 12]; [ECF No. 93-4 at 3] (stating that the anticipated amount is $462,102.02).  The Disclosure Statement squarely pins the success of Debtor's bankruptcy upon the shoulders of Jimenez.  [ECF No. 93 at 40] (stating that "[i]f, for any reason, Mar[c]o Jimenez is unable or unwilling to fund the capital infusion, the Debtor will not be able to fulfill its obligations under the Plan."); *see also* [ECF No. 105 at ¶ 8].  Thus, there is a certain responsibility placed on the Debtor's shoulders to disclose sufficiently adequate information about Jimenez in the Disclosure Statement so that creditors can "make an informed judgment about the plan."  § 1125(a)(1).

This Court heard lengthy testimony from Jimenez at the February 22, 2016 hearing on potential tomato cultivation in Jalisco, Mexico, the process, and how Debtor might derive income to fund its plan from such cultivation.  However, as Frescos Tomver complains, the Disclosure Statement does not incorporate much of the evidence from the February 22, 2016 hearing.  [ECF No. 105 at ¶ 8].  The Disclosure Statement includes numerous references to Jimenez, but the real substance of Debtor's disclosures regarding Jimenez appear only in the

section disclosing factors that pose a risk to the completion of the Plan and in Exhibit D. [ECF No. 93 at 41]; *see generally* [ECF No. 93-4] (Exhibit D). Exhibit D includes a chart that is, in essence, a pro forma accounting of the anticipated results of Jimenez's tomato cultivation efforts. [ECF No. 93-4 at 3-4]. At the February 12, 2016 hearing, the Court closely questioned Debtor's Counsel and Jimenez regarding the disclosures contained within the cultivation analysis because both Mexican Pesos and United States Dollars were being used. When analyzing these disclosures, in terms of the information contained within and whether a creditor would have sufficient information to accept or reject the Plan, the disclosures on Jimenez leave much to be desired. Frescos Tomver rightly points out that the Plan rides upon Jimenez's shoulders and should Jimenez fail to perform or simply decide not to perform, then the Plan will utterly fail. [ECF No. 105 at ¶ 9]. Debtor even concurs, in the very section dedicated to risks inherent to the Plan, that Jimenez is the lynchpin to ultimate success or ultimate failure. [ECF No. 93 at 41]. Thus, the need for a creditor to know more about Jimenez's financial information is paramount to make an informed decision about the Debtor's Plan and whether Jimenez is capable of consistently performing the undertaking upon which so much is staked. *In re MetroCraft*, 39 B.R. at 568; *see also In re Forest Grove, LLC*, 448 B.R. 729 (Bankr. D. S.C. 2011); *In re Cypresswood Land Partners, I*, 409 B.R. at 424. Based on the foregoing, this Court finds that the Disclosure Statement does not contain adequate information regarding Jimenez, his financial situation, and the tomato cultivation operation in Jalisco, Mexico.

### ii. Adequate Information About the Debtor

Frescos Tomver also objects to the Disclosure Statement on the basis that the disclosures regarding the Debtor itself are inadequate, specifically noting six *Metrocraft* factors. *See generally* [ECF No. 105 at 7-10]. The *Metrocraft* factors to which Frescos Tomver cites are

factors 2, 3, 8, 9, 14, and 16. *Id.*; *see also In re Metrocraft Pub. Servs., Inc.*, 39 B.R. at 568. The Court will address each factor separately.

*Description of the Available Assets and Their Value and Estimated Return to Creditors under a chapter 7 Liquidation*

In the Disclosure Statement, the section most likely to contain information on the Debtor is in part II, which discusses the Debtor, its management, and pre-petition financial structure. *See generally* [ECF No. 93 at 2, 12-14]. However, upon inspection of the corresponding pages, the entire section is completely devoid of any disclosures related to the Debtor's assets, aside from a minimal disclosure about the amount of the loan held by Inter National Bank. *Id.* In Exhibit E to the Disclosure Statement, Debtor provides a liquidation analysis that, *inter alia*, states the "Debtor's only significant assets are its real estate." [ECF No. 93-5 at 1]. In Debtor's own words, Debtor has one significant asset along with some other non-real property assets, but Schedule B reveals that the amount of personal property is far from paltry and certainly not as easily dismissed as Debtor attempts to do in the Disclosure Statement. *Id.*; [ECF No. 21 at 3-7]; *see also* [ECF No. 22] (stating $4.04 million in real property and $639,800.00 in personal property). None of these lesser assets are listed in the Disclosure Statement or seemingly factored into the liquidation analysis. As Frescos Tomver points out, given the options in the present case of liquidation or the terms of the Plan, it is extremely difficult for a creditor to determine whether the liquidation analysis is an adequate, if not preferable, alternative to the Debtor's Plan. [ECF No. 105 at ¶ 13(a)]. As far as this *Metrocraft* factor is being considered for adequate information, this Court finds the Disclosure Statement does not provide adequate information on the Debtor's assets and their value and the Liquidation Analysis is woefully inadequate by failing to account for all assets, not just the primary asset.

*Anticipated Future of the Debtor*

Frescos Tomver's next basis for its Objection is that the Disclosure Statement does not provide adequate information on the anticipated future of the Debtor. [ECF No. 105 at ¶ 13(b)]. In support of how the Disclosure Statement does not provide any insight into Debtor's operational plans beyond the provisions of the Plan. *Id.* The underlying issue here is whether the Debtor is planning to avoid cyclic bankruptcy filings in the future. The Disclosure Statement discusses Debtor's Plan for reorganizing and discloses the issues that led to the instant bankruptcy. [ECF No. 93 at 12-15, 19-20]. Beyond the time to perform the Plan, the Disclosure Statement merely states "[t]he Debtor shall continue to exist … after the Effective Date as separate entities, with all the powers available to such legal entities, in accordance with applicable law and pursuant to its constituent documents." *Id.* at 20. As a debtor in chapter 11, the obvious outcome to a successful reorganization—that the debtor should continue to exist—is exactly what the Debtor disclosed and nothing more. *Id.* The primary concern, based on this Court's reading of Frescos Tomver's Objection, as to the anticipated future of the Debtor is to the ability of creditors to analyze potential risks during the time Debtor will perform the terms of the Plan rather than whether Debtor can remain an ongoing concern post-bankruptcy. The point is nevertheless valid, whether focusing on risks to Plan performance or future prospects, is there adequate information to analyze the circumstances to make a decision. This Court finds the Disclosure Statement does not provide adequate information for a creditor to realistically determine the likelihood of Debtor's future prospects, notwithstanding the risks posed by Jimenez's performance and ability to do so.

> *The Accounting Method Utilized to Produce Financial Information and the Name of the Accountants Responsible for Such Information and Financial Information, Data, Valuations or Projections Relevant to the Creditors' Decision to Accept or Reject the Chapter 11 Plan*

Frescos Tomver also objects to the Disclosure Statement on two related factors regarding accounting methods used and the lack of financial projections. [ECF No. 105 at ¶ 13(i)-(j)]. The

Objection states that the financial information produced does not contain adequate information about historical accounting such that creditors can determine, based on past performance, whether Debtor's rental of the cold storage warehouse will be consistent in order to continue to cover the costs of the warehouse. *Id.* at ¶ 13(i). Additionally, Frescos Tomver objects on the basis that the Disclosure Statement fails to provide financial information, data, valuations, or projections to aid the creditors in making their decisions to vote in favor of or against the Plan. *Id.* at ¶ 13(j). Debtor's Statement of Financial Affairs states that the only Accountants working on behalf of Debtor are Garza & Morales CPAs. [ECF No. 21 at 29]. Garza & Morales CPAs are not mentioned at all in the Disclosure Statement, despite their long term relationship with Debtor. *Id.* (stating that services by Garza & Morales CPAs have been rendered since 2006). Moreover, a review of the docket shows Debtor has sought to only employ Debtor's Counsel and has yet to file a motion seeking to employ Garza & Morales CPAs. *See, e.g.,* [ECF No. 5]. *C.f.* [ECF No. 22] (requesting an extension of time to file 2014 income taxes and stating a need to hire a CPA to file 2014 income taxes); [ECF No. 43] (granting ECF No. 22, but the relief requested only sought an extension of time to file 2014 taxes and not permission to hire a professional). More troubling is that Debtor made a payment to Garza & Morales, despite the fact this Court has not entered an order approving such employment. *See* [ECF No. 104 at 1, 8] (declaring in the Monthly Operating Report for February 2016 that Debtor has not made any payments to a professional, yet disclosing a check to Garza & Morales for $600.00); *see also* 11 U.S.C. § 327; Fed. R. Bankr. P. 2016. Debtor's Statement of Financial Affairs also contains historical records on Debtor's operations, but gives no indication of net income from those operations. [ECF No. 21 at 24].

Turning now to financial projections, Frescos Tomver alleges the Disclosure Statement

does not contain any projections.  [ECF No. 105 at ¶ 13(i)].  The Disclosure Statement does include an exhibit with a projection for Jimenez's planned operations.  [ECF No. 93-4 at 3-4].  The importance of the disclosures related to Jimenez's planned operations is critical to Debtor meeting the "adequate information" standard because of the essential role Jimenez plays in the Plan.  *See supra* Part V.c.i.  The content contained within the projection does speak to Debtor's ability to consummate the Plan and thus informs creditors, albeit inadequately as previously discussed, regarding their decision to accept or reject the Plan.

Based on the foregoing, this Court finds the Disclosure Statement does not contain adequate information on projections, financial information, and professionals employed to provide such information.

*The Actual or Projected Realizable Value from Recovery of Preferential or Otherwise Voidable Transfers*

The final basis upon which Frescos Tomver objects to Debtor's Disclosure Statement is based on a statement regarding Debtor retaining all causes of actions, including avoidance or turnover actions.  [ECF No. 105 at ¶ 13(j)]; *see also* [ECF No. 93 at 15, 21, and 28].  As an initial matter, Debtor declares there is no pending litigation involving the Debtor.  [ECF No. 93 at 15].  However, Frescos Tomver points out that Debtor does not state any potential value of these retained actions in the Disclosure Statement.  [ECF No. 105 at ¶ 13(j)]; *see also* [ECF No. 93 at 15] (discussing potential litigation by the Debtor).  There remains the possibility Debtor is simply not aware of any avoidance or preferential transfers that may be prosecuted.  If that is the case, then Debtor should simply state that to be the case so that creditors may be provided with adequate information.  Although, Debtor did disclose a transfer of property, a produce sorting machine, to Arturo Jimenez in November 2014 for the price of $130,000.  [ECF No. 21 at 26].  Whether Arturo Jimenez is related to Marco Jimenez is unanswered, yet the transfer has been

disclosed to creditors.  Accordingly, this Court finds the Disclosure Statement does not contain adequate information about actual or projected realizable value from recovery of preferential or otherwise voidable transfers due to the fact that Debtor claims to retain the transfers, yet none have been disclosed, and the aforementioned transfer was only disclosed in the Statement of Financial Affairs, but not in the Disclosure Statement.

Although Frescos Tomver does not complain on the basis of any additional *Metrocraft* factors, this Court will also look to each of those to determine whether adequate information has been disclosed by the Debtor.

### The Events Which Led to the Filing of a Bankruptcy Petition

The Disclosure Statement recounts a brief history of the company.  [ECF No. 93].  The history discusses the beginning of financial trouble for the company, including, quite ironically, Debtor's decision to abandon produce growing operations.  *Id.*  The Disclosure Statement also discusses the role Frescos Tomver has played in forcing Debtor into filing the instant bankruptcy.  *Id.*  Overall, this Court finds there is adequate information to inform a creditor about the events that led to the instant bankruptcy such that a creditor can make an informed decision regarding the Plan.

### The Source of Information Stated in the Disclosure Statement

In the Disclosure Statement, the Debtor includes a brief blanket statement regarding the source of the information disclosed therein unless otherwise stated.  [ECF No. 93 at 5].  That source of information is the Debtor.  *Id.*  There have not been any professionals, aside from Debtor's Counsel, retained in the case.  *Id.* at 15.  The lingering issue of the source of information is material in respect to the projections presented for Jimenez's cultivation project. *See, e.g.*, [ECF No. 93-4].  Debtor does not indicate the source of the information contained

within, most pertinently the pricing information that is the basis for net profits from the operation. *Id.* At the February 22, 2016 hearing, Jimenez testified that these prices were based on his experience, but there is nothing to substantiate the prices used included in the Disclosure Statement. The source of pricing information, or really the lack thereof, could be a significant hurdle to creditors being able making an informed decision because lack of reliability in the forecasted revenues. Accordingly, this Court finds this factor is neutral as Debtor has provided adequate information in some respects, but inadequate information in others.

*A Disclaimer and Information Relevant to the Risks Posed to Creditors Under the Plan*

The Disclosure Statement includes a significant disclaimer. [ECF No. 93 at 5]. The disclaimer provides information to creditors regarding their rights, duties, what responses may be needed, and when such responses will be needed. *Id.* Furthermore, the Disclosure Statement also states what will occur should a creditor fail to timely respond. *Id.*

The Disclosure Statement details a summary of certain risks inherent to the bankruptcy process and specific to the Debtor. [ECF No. 93 at 42-43]. One of the primary risks disclosed is the funding from Jimenez. *Id.* Jimenez's role is critical to the success of the Plan, but Debtor, rightfully, discloses that should Jimenez not perform, for whatever reason, then the Plan would fail. *Id.* However, as Frescos Tomver points out, Debtor fails to disclose the risk posed to the Plan by the provisions of PACA on Jimenez or Debtor's ability to convert the tomatoes cultivated into income. *See generally* [ECF No. 105]. The remaining risks, i.e. insufficient acceptances and confirmation risks, disclosed by Debtor are those inherent to a chapter 11 bankruptcy. [ECF No. 93 at 42-43]. Aside from these risks to the performance of the Plan, Debtor also discusses what potential outcomes would result if the Plan is not confirmed. *Id.* at 43. Finally, Debtor includes a section discussing the potential of cramdown, whereby creditors

were made aware of the potential detrimental treatment under the Plan for classes that do not accept the Plan. *Id.* at 40-41.

As such, this Court finds Debtor has failed to disclose adequate information by including an inadequate disclaimer and by failing to detail the various risks posed to the creditors under the Plan.

*The Present Condition of the Debtor While in Chapter 11, the Future Management of the Debtor, and the Relationship of the Debtor with the Affiliates*

In the Disclosure Statement, Debtor discloses some, albeit inadequately, information about its post-petition condition. *See generally* [ECF No. 93]. One of the primary disclosures focuses on post-petition funding, where Debtor states that post-petition funding is only through income received through leasing of the storage space in its warehouse. *Id.* at 14. Exhibit D contains a *pro forma* cash flow analysis of this rental income stream, but that does not provide information on the *present* status of Debtor, only its anticipated future status. [ECF No. 93-4 at 1]. Debtor also discloses it "has not required, sought, or received any debtor-in-possession financing" other than those disclosed. [ECF No. 93 at 14]. In Exhibit B, Debtor discloses the historical contributions from Jimenez to Debtor's operations. *See generally* [ECF No. 93-2]. *But see In re Divine Ripe, L.L.C.*, 538 B.R. at 310-11 (discussing the nature of contributions by Jimenez). In Exhibit C, Debtor further discloses a significant amount of financial information contained in its Monthly Operating Reports for the period of August 2015 through December 2015. [ECF No. 93-3 at 1-43]. Exhibit C, for historical reference, also includes Debtor's tax returns from 2005 to 2014. *Id.* at 44-64. Notably, however, the Debtor does not include any present information on Debtor's financial condition, such as a balance sheet.

The Disclosure Statement states Jimenez has been the sole "manager of business operations" and member of the Debtor. [ECF No. 93 at 13]. In describing the classes of

creditors, the Plan provides that Class 5, "Interests in the Debtor," that "Jimenez shall acquire interest in the Reorganized Debtor … [and his] interest in the Debtor shall cease after the Assets are transferred to the Reorganized Debtor." *Id.* at 10. Thus, the Plan calls for Jimenez to retain his role as sole member of Debtor, and paves the way for Debtor's management structure to continue post-Plan confirmation. *Id.* at 10, 13, 19.

While the absolute priority rule is a matter, primarily, for confirmation, a discussion is warranted to disclose potential impacts of the absolute priority rule on Jimenez's *planned* retention of an interest in Debtor post-confirmation and whether the Plan treats creditors in a fair and equitable manner. [ECF No. 93 at 12, 40-41]; *see, e.g.,* 11 U.S.C. § 1129(b)(2)(B)(ii); *Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle St. P'ship*, 526 U.S. 434 (1999); *CHS, Inc. v. Plaquemines Holdings, L.L.C.*, 735 F.3d 231 (5th Cir. 2013). Here, Debtor provides a very technical explanation of the absolute priority rule, primarily via reciting statute, that may permit Jimenez to retain his interest, if the Plan is compliant with both provisions of § 1129(b)(2) and otherwise confirmable. *See generally* § 1129(b)(2); *In re Lively*, 466 B.R. 897 (Bankr. S.D. Tex. 2011), *aff'd*, 717 F.3d 406 (5th Cir. 2013). The Court has an independent duty to review such compliance, irrespective to an objection being made to the Plan's confirmation. *In re Lively*, 466 B.R. at 899 (citing to *In re Williams*, 850 F.2d 250, 253 (5th Cir. 1988)).

The Disclosure Statement makes several references to affiliates. [ECF No. 93 at 27, 32, and 34]. However, these references are without context because Debtor does not declare whether there are any incidents of ownership in other entities. In the hearings, it was often testified that Jimenez would provide capital or an investment in various entities in regards to their production efforts, and Exhibit B wholly evinces this pattern of conduct. [ECF No. 93 at 13] (stating that one of the primary revenue streams was selling produce received for investments into Mexican

growing operations); *see also* [ECF No. 93-2].  To wit, Debtor, in its schedules, stated that there is ongoing litigation in Mexico against Daniel Martinez, whose name is listed in Exhibit B.  *Id.* at 1.  Yet, there is no discussion of affiliates, beyond boilerplate references, and whether any such affiliates exist.

On the whole, this Court finds Debtor has failed to provide adequate information to fully inform creditors on either the present condition of Debtor, the implications of the planned future management of Debtor, or the relationship of Debtor with an affiliate, if any exist, or the absence thereof.

*The Scheduled Claims, the Chapter 11 Plan or a Summary Thereof, and the Estimated Administrative Expenses, Including Attorneys' and Accounts' Fees*

In the Disclosure Statement, Debtor discusses claims multiple times.  *See generally* [ECF No. 93].  The first mention of the claims is a summary of those claims treated under the Plan.  *Id.* at 6-10.  The majority of the scheduled claims are unsecured claims, which is reflected in the number of Class 4 claims under the Plan.  *Compare* [ECF No. 21 at 10-19] *with* [ECF No. 93 at 10] (listing 63 estimated holders of general unsecured claims).  The Disclosure Statement goes on to provide a more detailed description of each claim, whether it had been classified, and, if so, its treatment under the Plan.  [ECF No. 93 at 16-19].

A substantial portion of the Disclosure Statement is dedicated to aspects of the Plan.  [ECF No. 93 at 15-34].  These sections include a summary of the Plan's classification and treatment of claims.  *Id.* at 16-19.  The implementation of the Plan is also included.  *Id.* at 17-33.  Thus, the Debtor has satisfied the *Metrocraft* factor for including adequate information on the Plan or a summary thereof and, when taken in conjunction with the information disclosed as a part of the Plan, Debtor has disclosed adequate information about the scheduled claims in its case.

On the factor relating to administrative expenses, the Disclosure Statement is somewhat lacking.  The Disclosure Statement includes several discussions of the underlying expenses. [ECF No. 93 at 16-17, 34].  However, the primary discussion of administrative expenses is open-ended and does not provide any detail as to the potential amount of administrative expenses, merely the procedure for such expenses to be filed.  *Id.* at 16.  In Exhibit D, Debtor does disclose that attorney's fees are $40,000.  [ECF No. 93-4 at 1]; *see also* [ECF No. 93-3 at 34] (disclosing that, as of December 31, 2015, Debtor had paid $2,000.00 in professional fees).  While these disclosures are included in exhibits to the Disclosure Statement, this Court finds Debtor fails to disclose adequate information regarding administrative expenses in any meaningful way to assist creditors in making an informed decision about the Plan.

*The Collectability of Accounts Receivable and Litigation Likely to Arise in a Non-bankruptcy Context*

In business, the colloquialism of "cash is king" is commonly understood and it is of paramount importance to a debtor.  *See Aquilla v. Washington Gas Resources Corp.*, Case No. RWT 02-3138, 2006 WL 2130639, at *1 (D. Md. July 21, 2006) (stating that "[i]n business dealings, it is often said that … "cash is king"); *see also* Norton Bankruptcy Law and Practice 3d § 94.1 (stating that "[p]erhaps the single most important aspect of any operating business bankruptcy case is the availability of cash").  The ability of a debtor to collect on accounts receivable is one pathway for a debtor to generate cash flow.  Norton Bankruptcy Law and Practice 3d § 94.1.  The Disclosure Statement does not contain any discussion of what Debtor intends to do with any accounts receivables nor are there any disclosed on Schedule B.  *See generally* [ECF Nos. 93 and 21 at 3-7].  Furthermore, the only point at which "receivable" even arises in the Disclosure Statement is in a section dedicated to confirmation of the Plan operating to prohibit recoupment by creditors against any such account receivable."  *Id.* at 28.  This

deficiency is particularly shocking, especially given another *Metrocraft* factor necessitating the discussion of potential non-bankruptcy litigation, when Debtor, on its Statement of Financial Affairs, disclosed the ongoing litigation against Daniel Martinez.  [ECF No. 21 at 25] (stating the lawsuit is for the purpose of "Debt Collection and Suit on Guaranty"); *see also In re Metrocraft Pub. Servs., Inc.*, 39 B.R. at 568.  Thus, the Debtor has not disclosed adequate information about potential or actual account receivables that may be collectible and, if so, the extent to which the account receivables are collectible.

As previously mentioned, the Debtor disclosed a number of suits in its Statement of Financial Affairs.  [ECF No. 21 at 25].  Of these various lawsuits, two are disclosed as ongoing, as of the date Debtor filed its Statement of Financial Affairs, but neither is discussed in the Disclosure Statement.  *Compare* [ECF No. 21 at 25] *with* [ECF No. 93 at 15].  However, as noted in this Court's prior Opinion, Frescos Tomver's Motion for Summary Judgment was granted by the district court as to Debtor.  *In re Divine Ripe, L.L.C.*, 538 B.R. at 303; [Case No. 7:13–cv–0577, ECF No. 85]; [ECF No. 93] (severing the Debtor from the litigation against Jimenez and staying proceedings against Debtor); *see, e.g.*, [Case No. 7:15-cv-367, ECF No. 1]. Given the disclosures made by the Debtor in the Statement of Financial Affairs and the lack thereof in the Disclosure Statement, this Court can only conclude that the Debtor failed to provide adequate information, as to non-bankruptcy litigation, to creditors in the Disclosure Statement.  *See generally* [ECF No. 21 at 25]; [ECF No. 93 at 15].

*Tax Attributes of the Debtor*

In regard to the tax attributes of the debtor, one court looked to whether the disclosure statement before it had provided information about the potential tax issues presented to the debtor by the proposed plan and whether the disclosure statement had actually provided that

information.  *In re Pacific Shores Dev., Inc.*, 2011 WL 778205, at *1, *5 (Bankr. S.D. Cal. Feb. 25, 2011) (noting that the general discussion of tax law was insufficient because there was no analysis of the debtor's tax consequences resulting from proposed plan).  Here, Debtor includes a disclaimer about tax consequences of the Plan in the Disclosure Statement.  [ECF No. 93 at 34-35].  However, like the debtor in *Pacific Shores*, Debtor's discussion is wholly vague and non-committal as to the tax consequences of the Plan not only to the Debtor, but also to creditors. *Compare* [ECF No. 93 at 34-35] *with In re Pacific Shores Dev., Inc.*, 2011 WL 778205, at *5. At least the debtor in *Pacific Shores* had consulted with a CPA and subsequently submitted a declaration regarding her interpretation and estimation of tax consequences to the debtor.  *In re Pacific Shores Dev., Inc.*, 2011 WL 778205, at *5.  Whereas here, rather than providing any insight into the potential tax consequences, Debtor directs creditors to consult with their own tax advisors as to the potential consequences of the Plan.  [ECF No. 93 at 35].  Accordingly, this Court finds that Debtor has failed to provide adequate information in its Disclosure Statement as to the tax attributes of the Debtor.

Having analyzed, in turn, each of the *Metrocraft* factors and whether the Debtor's disclosures in the Disclosure Statement rise to the level of adequate information, this Court finds, on the whole, the Disclosure Statement woefully fails to meet that standard.

### iii. Legal Impediments to Plan Confirmation and the Disclosure Statement

At the Hearing and in the Objection, Frescos Tomver argues about a potential legal impediment to the execution of the Plan that involves provisions of the Perishable Agricultural Commodities Act ("***PACA***").  7 U.S.C. §§ 499a-499s; [ECF No. 105 at ¶ 9].  Specifically, the impediment lies in potential bar to the Plan's confirmation, as the Plan almost entirely relies upon contributions from Jimenez to satisfy payments to unsecured creditors that could

potentially violate PACA.  [ECF No. 105 at ¶ 9].  While the Plan may be proposed in good faith, Frescos Tomver argues the provisions contained therein may be forbidden by law and thus not confirmable.  [ECF No. 105 at ¶ 11].  *C.f.* 11 U.S.C. § 1129(a)(3); 7 C.F.R. §§ 46.2-46.4.  To wit, Frescos Tomver states both Debtor and Jimenez "lack the ability to engage in the produce business in the United States because of [Jimenez]'s prior violations of the Perishable Agricultural Commodities Act" and thus the Plan cannot be confirmed.  [ECF No. 105 at ¶¶ 9, 11].  Thus, the real basis for the Objection, as to the legality of the Plan's provisions, is that Debtor, in Frescos Tomver's opinion, has not adequately explained how Jimenez will "deal[ing] in tomatoes when he is prohibited from doing so…"  *Id.*

Here, Frescos Tomver alleges the Debtor cannot "sell perishable agricultural commodities," i.e. the tomatoes to be grown by Jimenez, without violating provisions of PACA. [ECF No. 105 at ¶ 11].  Frescos Tomver alleges this potential violation of PACA is a barrier to the confirmation of the Plan.  *Id.*  However, as Frescos Tomver does not state the basis of this bar to confirmation, the Court is at a loss to determine whether Frescos Tomver is attempting to harness an interpretation of § 1129(a)(3)'s "means forbidden by law" to serve as such a bar, or if Frescos Tomver intends for another section of the Code to serve as the bar to confirmation.  In either case, this is a matter for confirmation and, as the Court has already determined that the Debtor's Disclosure Statement did not include adequate information regarding Jimenez, as the lynchpin of the reorganization, or the Debtor, the Court need not delve any further into this argument.

### iv.  The Disclosure Statement Does Not Contain Adequate Information

Based on the foregoing analysis, this Court finds the Disclosure Statement does not contain adequate information about the Debtor and Jimenez's financial resources necessary to successfully play his role in the Debtor's reorganization.  This Court further finds the Disclosure

Statement falls short in containing adequate information on multiple *Metrocraft* factors and, as such, creditors would be hard pressed to determine whether to vote in favor of the Debtor's Plan. Furthermore, while the Court did not reach the merits of the potential legality of provisions of the Debtor's Plan, namely whether the proposed operations by Jimenez and the Debtor to produce and somehow bring to market certain perishable agricultural commodities, the potential roadblocks to successful reorganization do represent a matter that the Debtor should clarify exactly *how* it intends to raise funds in light of the provisions of PACA. Accordingly, this Court finds the Disclosure Statement should not be approved and Frescos' Tomver's Objection should be sustained.

### d. Saul Zuniga Does Not Qualify to be an "Other Person in Control"

The Code provides a debtor may be represented by other individuals when the debtor is not a natural person. Fed. R. Bankr. P. 9001(5). The substitute debtors provided by Rule 9001 is a non-exhaustive list with the final catchall option being "other person in control." *Id.* It is pursuant to that catchall that the Debtor sought to name Saul Zuniga, an employee of the Debtor, to be its representative. *See generally* [ECF No. 68]. Frescos Tomver opposed this appointment on the basis that Zuniga did not qualify as an "other person in control" based on its interpretation of Texas law governing the formation and management of limited liability companies. [ECF No. 76 at ¶ 2-3]; *see also* Tex. Bus. Orgs. Code § 101.251-.252. The Court will now review the sought-after appointment, in light of the objections Frescos Tomver raised.

The policy objective of the code is to not only encourage the flow of information regarding the debtor's affairs, but also ensure that the person who represents the debtor is a person sufficiently in control of the debtor. *See In re Red River Energy, Inc.*, 409 B.R. at 181-82; *In re Muy Bueno Corp.*, 257 B.R. at 847-49 (stating that "[t]he structure of the Code (and its

implementing rules) is designed to assure that creditors, the court and court-appointed representatives will have ready and early access to correct information about the corporate debtor's affairs."). Here, the Debtor's sole representative, Jimenez, is primarily located in the state of Jalisco, Mexico, while Zuniga is the "*de facto* business, finance and operations manager and natural person in control of [Debtor's] business…" [ECF No. 68 at ¶¶ 2, 8]. Thus, the argument is that Zuniga represents, at least according to the argument made in Debtor's Motion to Appoint, the person who is best able to provide "ready and early access to correct information about the corporate debtor's affairs." [ECF No. 68 at ¶ 2]; *In re Muy Bueno Corp.*, 257 B.R. at 847-49. However, as Frescos Tomver points out in its Response, the Debtor's sole member is "solely responsible for controlling and 'manag[ing] the business and affairs of the company." [ECF No. 76 at ¶ 3]; Tex. Bus. Orgs. Code § 101.251-.252.

Turning to the testimony presented at the February 12 hearing, Zuniga testified extensively as to his role in the Debtor's operations. The Court certainly finds Zuniga's testimony, as to the operations of the Debtor, was extensive and credible, but the issue is whether he is truly *in control* and knowledgeable about the Debtor's affairs. *See, e.g.*, Fed. R. Bankr. P. 9001(5); *In re Muy Bueno Corp.*, 257 B.R. at 847-49. To wit, there was extensive testimony regarding the Debtor's renegotiation of the financing terms from Inter National Bank and Zuniga's role in that negotiation process. Ultimately, Zuniga admitted it was Jimenez that made the decision on the renegotiation of financing based on Zuniga's recommendation. Furthermore, during his cross-examination, Zuniga admitted Jimenez had not provided him with any documents permitting him to act on behalf of the Debtor and it was Jimenez that executed the renegotiated financing with Inter National Bank, not Zuniga. *C.f.* Tex. Bus. Orgs. Code § 101.253-.254. Zuniga's testimony indicates that the Debtor's operations are consistent with the

Texas statutes governing management and control of a limited liability company absent delegation to the contrary. TEX. BUS. ORGS. CODE § 101.251-.254. Moreover, Debtor's Counsel, at the February 12, 2016 hearing, responded to a question posted by the Court that he was not attempting to elevate Zuniga beyond his current position such that he could act in a fiduciary capacity. [ECF No. 89 at 67].

Accordingly, this Court finds Zuniga does not meet the dual requirements of being both knowledgeable about the Debtor's affairs and having been formally given the authority to act on behalf of the Debtor by the Debtor's sole member, Jimenez, pursuant to the standards of Fed. R. Bankr. P. 9001(5) and TEX. BUS. ORGS. CODE § 101.251-.254. As such, this Court must find, and does, that Zuniga does not qualify as an "other person in control" and therefore Debtor's Motion to Appointment must be denied.


## VI.    CONCLUSION

Pending before the Court are three motions: Debtor's Motion to Appoint, and Frescos Tomver's Objection and MTD. The Court, for the purposes of this Memorandum Opinion, is only taking up the Motion to Appoint and the Objection. Based on the foregoing, the Court, having adopted the *Metrocraft* factors, finds the Debtor failed to provide adequate information as to certain portions of the Debtor's affairs and failed to provide adequate information as to Jimenez, but does not reach the merits of the legality of certain plan provisions relied upon by the Debtor that may serve as a bar to confirmation. Furthermore, the Court finds Zuniga does not qualify as an "other person in control," as contemplated by Fed. R. Bankr. P. 9001(5) and TEX. BUS. ORGS. CODE § 101.251-.254, such that Zuniga may be appointed Debtor's representative. For the reasons stated above, this Court holds that the Debtor's Motion to

Appoint is **DENIED** and Frescos Tomver's Objection is **SUSTAINED** and, as such, Debtor's Disclosure Statement is **NOT APPROVED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 07/21/2016.

Eduardo V. Rodriguez
United States Bankruptcy Judge